# FOR PUBLICATION



**FILED & ENTERED**

**DEC 21 2018**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** steinber **DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Albert Torres, Jr.<br>Katherine Lea Torres<br><br><br><br><br><br>Debtor(s). | Case No.: 8:16-bk-12250-MW<br><br>CHAPTER 7<br><br>**MEMORANDUM DECISION AND ORDER ON ORDER TO SHOW CAUSE WHY MICHAEL ROENNAU SHOULD NOT BE HELD IN CIVIL CONTEMPT OF COURT FOR VIOLATING THE DISCHARGE INJUNCTION**<br><br>Hearing Date:  November 7-8, 2018<br>Time:  2:30 p.m.<br>Courtroom:  6C |

Theodore B. Stolman, Esq. and Carol Chow, Esq., Freeman, Freeman & Smiley, LLP for Michael Roennau

Michael Jones, Esq. and Sara Tidd, Esq., M. Jones & Associates, PC for Katherine Lea Torres

**WALLACE, J.**

## FACTUAL BACKGROUND

Katherine L. Torres ("Ms. Torres") formed Le Pop Shop, LLC, a California limited liability company ("Le Pop Shop"), on March 8, 2013.[1] Le Pop Shop was engaged in the business of owning and operating a bakery manufacturing and selling (both locally and across state lines) French-style cookies known as macarons.[2] Ms. Torres was Le Pop Shop's sole member. In May 2015 a First Amended Operating Agreement of Le Pop Shop, LLC (the "Amended Operating Agreement") was drawn up, admitting new members Michael Roennau ("Mr. Roennau") and Sevilla Alexander. Mr. Roennau made a $125,000 capital contribution in exchange for a 25 percent interest in Le Pop Shop. Subsequently, he loaned an additional $103,784.93 to Le Pop Shop and obtained Ms. Torres's personal guaranty.[3]

Ms. Torres was primarily responsible for opening and operating Le Pop Shop, utilizing bakery designs and recipes that she contributed to Le Pop Shop. She was also responsible for maintaining Le Pop Shop's financial records.[4]

Le Pop Shop failed to open a retail location in San Clemente, leading to a dispute

---

[1] State of California, Secretary of State, Statement of Information (Limited Liability Company) of Le Pop Shop, LLC, filed March 8, 2013.
[2] Reporter's Transcript for November 7, 2018 ("1 R.T.") at 108, lines 12-20.
[3] The Complaint (as hereinafter defined) alleges in numbered paragraph 28 thereof that "Plaintiff was induced to and did pay a contribution of $237,500 to Le Pop Shop, LLC." This implies a contribution to capital. However, numbered paragraph 14 of the Complaint states that $117,500 went in as loans with interest rates ranging from 1 percent to 8 percent per annum. The Stipulation of Facts and Contentions Re Evidentiary Hearing on Order to Show Cause Why Michael Roennau Should Not Be Held in Civil Contempt, Docket No. 61, filed August 29, 2018 (the "Fact Stipulation") resolves this matter in favor of a split capital contribution of $125,000 and loans of $103,784.93.
[4] Fact Stipulation at numbered paragraph 4.

between Mr. Roennau and Ms. Torres.[5]  In addition, there was a dispute over Le Pop Shop's financial records.  Mr. Roennau demanded that Ms. Torres turn over for inspection Le Pop Shop's general ledger and other financial records.  Ms. Torres contends that she turned over these materials as requested.  Mr. Roennau contends that she failed to do so.[6]

Litigation commenced in Orange County Superior Court (the "State Court Action") between Mr. Roennau as plaintiff and Ms. Torres and Le Pop Shop as defendants.[7]  The complaint (the "Complaint") filed by Mr. Roennau on May 20, 2016 in the State Court Action alleges in numbered paragraphs 7 through 10 that Ms. Torres is an alter ego of Le Pop Shop, that Le Pop Shop was a mere shell and in any event was inadequately capitalized.  Causes of action one through five in numbered paragraphs 20 through 45 allege fraud and deceit, negligent misrepresentation, breach of fiduciary duties, breach of contract and an accounting.  Numbered paragraphs 16 and 17 allege that Ms. Torres spent Le Pop Shop's money for nail salon visits, personal trips around the country, medical bills, grocery shopping and fancy dinners.

At the evidentiary hearing on this matter on November 8, 2018, Mr. Roennau testified that he had never been provided with a satisfactory accounting with respect to all the money he had contributed or loaned to Le Pop Shop.  At one point he received a partial ledger, but there remained considerable uncertainty as to how and for what items his capital contribution and loans had been spent.[8]  Despite repeated requests for an accounting, no accounting was ever provided.[9]

The Complaint was served on Ms. Torres (both individually and in her capacity as person authorized to accept service of process for Le Pop Shop) either on June 2,

---

[5] Fact Stipulation at numbered paragraph 6.
[6] Fact Stipulation at numbered paragraphs 6 and 7.
[7] *Roennau v. Torres et al.*, Case No. 30-2016-00853829-CU-FR-CJC.
[8] Reporter's Transcript for November 8, 2018 ("2 R.T.") at 3:  ". . . we didn't have a true sense of what – I didn't have a sense of what had happened."
[9] 2 R.T. at 5, lines 2-9.

2016 or June 6, 2016.[10]

Eight days after the Complaint was filed in the State Court Action, on May 28, 2016, Ms. Torres and her husband, Albert Torres, Jr., filed a voluntary joint chapter 7 petition in this Court (jointly, "Debtors"). Debtors scheduled Mr. Roennau as a creditor holding a disputed claim in an unknown amount.

Mr. Roennau was unaware of Debtors' bankruptcy filing when he caused Ms. Torres to be served with process on June 2 or June 6 with the Summons and Complaint initiating the State Court Action. Ms. Torres was unaware of the pendency of the State Court Action when she and her husband filed their chapter 7 petition on May 28, 2016.

Debtors' attorney, Michael Jones, Esq. ("Mr. Jones"), sent a letter dated June 9, 2016 to Mr. Roennau's attorneys in the state court action, Steven Gourley, Esq. ("Mr. Gourley") and David C. Chang, Esq., advising them of the filing of the Debtors' bankruptcy petition and the effect of the automatic stay enjoining "all collection activity against the debtors." Mr. Gourley replied by letter dated July 15, 2016, informing Mr. Jones that the state court having jurisdiction over the parties in the Complaint would be notified of the pendency of the bankruptcy case in a case management conference scheduled for November 4, 2016. Further, Mr. Gourley stated "[i]f the bankruptcy filing should proceed to discharging the liability of the debtors, we intend to object to dischargeability of any of our client's claims for fraud against Katherine Lea Torres."

The section 341(a) meeting of creditors was set for July 11, 2016. The last day for commencing an adversary proceeding objecting to the Debtors' discharge in general or to the discharge of a specific debt was September 9, 2016. Fed. R. Bankr. P. 4004(a), 4007(c). The chapter 7 trustee, Thomas H. Casey, filed a no-asset report one day after the section 341(a) meeting, on July 12, 2016. The Debtors received their discharge on September 19, 2016, and the case was closed on September 20, 2016.

---

[10] Proof of Service of Summons in *Roennau v. Torres et al.*, Case No. 30-2016-00853829-CU-FR-CJC, dated June 13, 2016 (the "Proof of Service of the Summons"). Ms. Torres's declaration states service occurred on June 6, 2016. The disparity in dates is not material.

Mr. Roennau was notified on or about September 19, 2016 of the entry of the discharge.[11]

Although Mr. Roennau could have commenced an adversary proceeding asking this Court to determine that Ms. Torres's obligation to him was excepted from discharge on the ground of fraud – and although his attorneys had specifically stated they intended to object on grounds of fraud to the discharge of Ms. Torres's debts to Mr. Roennau -- he did not do so.

Instead of proceeding with an adversary proceeding in this Court, Mr. Roennau continued with the State Court Action against Le Pop Shop – with the alter ego allegations of the Complaint still in place. Proof of Service of the Summons was filed in state court on October 20, 2016, approximately one month after the granting of the discharge.

Mr. Roennau filed a voluntary dismissal of Ms. Torres **without** prejudice in the State Court Action on November 18, 2016.

On December 20, 2016, Mr. Gourley signed a Notice to Defendant Le Pop Shop, LLC Regarding Punitive Damages in his capacity as Mr. Roennau's attorney, reserving the right to seek $200,000 in punitive damages in the State Court Action against Le Pop Shop. This pleading was served on Ms. Torres in her capacity as Le Pop Shop's agent for service of process on March 8, 2017.[12]

Neither Ms. Torres nor Le Pop Shop made any effort to defend the State Court Action.[13] Importantly, the Court finds that there is no evidence that Mr. Roennau at any time amended the Complaint to eliminate the alter ego allegations made in the Complaint against Ms. Torres individually. All such allegations remained in the Complaint at the time Mr. Roennau applied for the entry of a default against Le Pop Shop in the State Court Action.

---

[11] Fact Stipulation at numbered paragraph 18.
[12] Fact Stipulation at numbered paragraph 23. Ms. Torres contends she was served in her capacity as the alter ego of Le Pop Shop.
[13] Fact Stipulation at numbered paragraph 21.

On May 10, 2017, Mr. Gourley filed on Mr. Roennau's behalf a Request for Entry of Default against Le Pop Shop.[14]

About two weeks later, on May 26, 2017, Ms. Torres filed in this Court a Motion for Sanctions and Damages Resulting From Discharge Violations, Docket No. 26 (the "Motion for Sanctions").  This Court filed and entered an Order to Show Cause Why Michael Roennau Should Not Be Held in Contempt of the Discharge Injunction, Docket No. 28, June 20, 2017 (the "OSC").  The OSC ordered Mr. Roennau to appear and show cause why he should not be held in contempt for violating the discharge injunction under 11 U.S.C. § 524(a)(2) by proceeding with the State Court Action with the alter ego allegations in the Complaint still intact following the entry of the Ms. Torres's discharge on September 19, 2016.  Subsequently, the Court held hearings on the OSC, including an evidentiary hearing on November 7-8, 2018.

## ANALYSIS

### 1. Did a Discharge Injunction Violation Occur?

A discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any . . . debt as a personal liability of the debtor . . . ."  11 U.S.C. § 524(a)(2).  But for the alter ego allegations of the Complaint in the State Court Action, it would have been clear that there was no violation of the discharge injunction:  Ms. Torres had been dismissed from the State Court Action, and Mr. Roennau was proceeding only against Le Pop Shop.

Ms. Torres contends that because the Complaint alleges that she and Le Pop Shop are one and the same person, allegations against Le Pop Shop are allegations against her, and therefore Mr. Roennau's continuation of the State Court Action against Le Pop Shop after the discharge was granted on September 19, 2016 violates the

---

[14] Fact Stipulation at numbered paragraph 25.

-6-

discharge injunction by continuing an action and employing process to collect or recover a debt as Ms. Torres's personal liability.

Mr. Roennau disputes this analysis. He argues that even if he obtains a default judgment against Le Pop Shop, Ms. Torres has nothing to worry about because under California law she cannot be added to the default judgment as a judgment debtor, citing California Code of Civil Procedure § 187, *Motores De Mexicali, S.A. v. Superior Court In and For Los Angeles County,* 51 Cal. 2d 172 (1958) and *NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 780-81 (Ct. App. 1989). Additionally, in closing argument at the evidentiary hearing Mr. Roennau's counsel pledged not to expand a judgment against Le Pop Shop to include Ms. Torres or to make her liable for that judgment.[15]

The alter ego doctrine is intended to prevent the abuse of an entity's limited liability shield by the entity's owners. Where an entity is used by an individual to perpetrate a fraud or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate or LLC entity and treat the acts as if they were done by the individual. 9 SUMMARY OF CALIFORNIA LAW (11th Edition) Corporations §11, B.E. Witkin; *Shapoff v. Scull*, 222 Cal. App. 3d 1457 (1990). A sole owner of a corporation can be added to a California judgment under the alter ego doctrine even though such person was determined by the court not to be liable for fraud. *Misik v. D'Arco,* 197 Cal. App. 4th 1065, 1074 (Ct. App. 2011) ("Therefore, amending a judgment to add an alter ego does not add a new defendant but instead inserts the correct name of the real defendant").

California Code of Civil Procedure § 187, entitled "Implied Powers to Effectuate Conferred Powers," has been held to authorize a trial court to amend a judgment to add a judgment debtor who is found to be an alter ego of a corporate defendant. *Misik v. D'Arco, supra,* 197 Cal. App. 4th at 1069. Section 187 does not expressly limit the application of this doctrine where a default judgment is involved and a plaintiff seeks to add a person as a judgment debtor on an alter ego theory.

---

[15] 2 R.T. at 45, lines 16-23.

In *Motores De Mexicali, S.A. v. Superior Court In and For Los Angeles County,* 51 Cal. 2d 172 (1958), cited by Mr. Roennau, the Supreme Court of California refused on due process grounds to permit a plaintiff to add three individuals to a default judgment on an alter ego theory. Mr. Roennau argues this is a blanket rule applying to all default judgments, but this Court does not read *Motores De Mexicali* so broadly. The key fact in *Motores De Mexicali* is that the three individuals alleged to be alter egos of Erbel, Inc. were not named as parties or served in their individual capacities. *Motores De Mexicali, S.A. v. Superior Court In and For Los Angeles County*, *supra,* 51 Cal. 2d at 173. Additionally, it would appear from the California Supreme Court's decision that the alter ego allegations did not surface until after a default judgment had been rendered against Erbel, Inc. In summary, *Motores De Mexicali* addresses a fact situation where the individuals sought to be added to a default judgment on an alter ego theory were not named as defendants and had no duty to appear and defend personally because no claim had been made against them personally.

Here, Ms. Torres was named as a defendant, and she had a duty to appear and defend personally, at least until she was dismissed from the case. Moreover, in light of the alter ego allegations in the Complaint – which do not appear to have been present in *Motores De Mexicali* – she was on notice that ground work was being laid for a judgment against her personally. Finally, Ms. Torres had the right to participate in and control the defense of the action against Le Pop Shop in her capacity as Le Pop Shop's manager. The notice-and-opportunity-to-be-heard due process considerations that were found to be lacking in *Motores De Mexicali* are not lacking here.

*NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 780-81 (Ct. App. 1989), also cited by Mr. Roennau, is similarly distinguishable. Here again a California court refused to add an individual to a judgment against an entity on an alter ego theory. However, the key facts are that the individual was not named as a party, was not served in his individual capacity and did not control the entity nor have an opportunity to present a defense of the entity. These facts distinguish *NEC Elecs.* from this case, where Ms.

Torres was named as a party, controlled Le Pop Shop and had full opportunity to direct Le Pop Shop's defense in her capacity as manager.

Although the matter is not entirely free from doubt, the Court concludes that the most likely outcome is that in the normal course of events, and without any intervention by this Court based upon the discharge injunction, Mr. Roennau would be successful in adding Ms. Torres to a default judgment obtained against Le Pop Shop under the authority of California Code of Civil Procedure § 187.

Mr. Roennau's second argument is that even if he obtains a default judgment against Le Pop Shop, he has no intention of adding Ms. Torres to the judgment. Hypothetically, if a plaintiff were to name as joint tortfeasors in a state court action involving a prepetition tort a debtor who had received a bankruptcy discharge and five other persons, continuation of the action against all six would violate the discharge injunction notwithstanding the plaintiff's protestation that he was really pursuing only the five persons and had no design to collect against the debtor. Here, similarly, Mr. Roennau's professed good intentions regarding Ms. Torres cannot prevail over alter ego allegations in the Complaint that any separateness between Ms. Torres and Le Pop Shop has ceased to exist. Moreover, there is no requirement that a debtor seeking to enforce a discharge injunction prove that the action against him in state court with respect to a discharged prepetition debt will actually succeed and result in collection – the mere continuation of such an action violates the discharge injunction.

While the dismissal of Ms. Torres from the State Court Action adds some strength to Mr. Roennau's argument, this strength is completely undercut by the alter ego allegations that remain in the complaint. Ms. Torres remains as a defendant for practical purposes because of those alter ego allegations, which contend that Le Pop Shop <u>is</u> Ms. Torres. This is shown by *Yan v. Lombard Flats, LLC (In re Lombard Flats, LLC)*, 2016 U.S. Dist. LEXIS 38112, Case No. 15-cv-00870-PJH (N.D. Cal., March 26, 2016). In *Yan*, chapter 11 debtor Lombard Flats, LLC ("Lombard") received a chapter 11 discharge in connection with a confirmed plan of reorganization. Legal Recovery,

LLC sued Martin Eng, Lombard's principal, on a reverse-piercing theory, alleging that Lombard was an alter ego of Eng and liable for Eng's debts (notwithstanding Lombard's discharge). After determining that the alter ego claim arose prepetition with respect to Lombard, the United States District Court for the Northern District of California determined that such claim was subject to the discharge injunction and therefore was barred. The district court therefore affirmed the bankruptcy court order finding a discharge injunction violation and holding Legal Recovery, LLC in contempt of court. *Yan* stands for the proposition that if *A* receives a bankruptcy discharge, an action against *B* alleging that *A* and *B* are alter egos violates the discharge injunction if it is shown that the alter ego claim is a prepetition claim. Thus, *Yan* indicates that not only is the continuation of the State Court Action against Ms. Torres (recipient of the discharge) a violation of the discharge injunction but also that the State Court Action's continuation against Le Pop Shop likewise violates the discharge injunction as long as the alter ego allegations remain in the Complaint. By alleging in numbered paragraph 9 of the Complaint in the State Court Action that Ms. Torres is an alter ego of Le Pop Shop "and that there exists, and at all times herein mentioned has existed, a unity of interest and ownership between such defendants, such that any separateness has ceased to exist," Mr. Roennau has made the continuation of the State Court Action against Le Pop Shop a continuation against Ms. Torres individually.

      The Court concludes that each of the actions taken by Mr. Roennau in the State Court Action after the entry of Ms. Torres's discharge on September 19, 2016 (except her dismissal from that lawsuit and, possibly, the filing of a case management statement on or about October 20, 2016) violated the discharge injunction. This includes the service of notice of punitive damages on Ms. Torres and the filing of a request for entry of default.

      2. <u>Should the Court Award Damages to Ms. Torres?</u>

    *Lorenzen v. Taggart (In re Taggart)*, 888 F.3d 438 (9th Cir. 2017) holds that there is a two-part test for determining the propriety of a contempt sanction in the context of a

discharge injunction violation: the movant must prove that the creditor (1) knew the discharge injunction was applicable; and (2) intended the actions that violated the injunction.

Mr. Roennau testified at the evidentiary hearing that no one told him continued prosecution of the State Court Action was in violation of the discharge injunction and that he had no inkling of this until the Motion for Sanctions was filed in May 2017.[16] The Court regards this testimony as completely credible. The Court therefore concludes that Mr. Roennau did not know the discharge injunction was applicable to the actions he was taking in the State Court Action after September 19, 2016. *Lorenzen v. Taggart (In re Taggart)* prohibits the award of sanctions in this situation, and none are awarded.

3. <u>Conclusion</u>.

Mr. Roennau violated the discharge injunction by continuing the prosecution of the State Court Action after September 19, 2016 against Le Pop Shop and Ms. Torres. Even after the dismissal of Ms. Torres from the State Court Action, continued prosecution of the State Court Action against Le Pop Shop violated the discharge injunction because of the continuing presence in the Complaint of alter ego allegations. The effect of the alter ego allegations is to render prosecution against Le Pop Shop prosecution against Ms. Torres for purposes of 11 U.S.C. § 524(a)(2). Sanctions against Mr. Roennau are not awarded because Mr. Roennau did not know that the discharge injunction was applicable to the actions he was taking in the State Court Action.

IT IS SO ORDERED.

Date: December 21, 2018

Mark S. Wallace
United States Bankruptcy Judge

---

[16] 2 R.T. at 10-13.

-12-